SARPY COUNTY, APPELLEE, V. OMAHA & SOUTHERN INTER-
URBAN RAILWAY COMPANY, APPELLANT.

FILED MARCH 7, 1928. NO. 25434.

*John L. Webster* and *R. B. Hasselquist,* for appellant.

*O. S. Spillman, Attorney General, Hugh La Master, H. A. Collins* and *William P. Nolan, contra.*

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON, EBERLY and HOWELL, JJ., and REDICK, District Judge.

GOOD, J.

Sarpy county began this proceeding by filing a complaint before the Nebraska state railway commission, praying that the railway commission should order the Omaha & Southern Interurban Railway Company, defendant, to construct an overhead crossing over its tracks at a point where they intersect what is known in the record as the "Gregg road." The defendant filed an answer denying that the Gregg road was a highway, alleging that there was no public necessity or convenience to be served by the construction of an overhead crossing or bridge at the point designated, and further alleging its financial inability to comply with any order in that respect. Upon the issues joined a hearing was had before the commission. Elaborate and detailed findings of fact and conclusions of law were made, followed by an order which directed the defendant to construct an overhead crossing at the point in question when, and not before, the county authorities place the highway in a reasonably passable condition. Defendant has appealed.

As grounds for a reversal of the order, defendant avers that the railway commission is without jurisdiction or authority to make such a conditional order as that entered in this case, and that the order is not sustained by the evidence or findings of fact made by the commission.

Neither party raises any question as to the correctness of the findings of fact made by the commission. An independent investigation of the record leads us to the conclusion that each finding of fact is sustained by the evi-

dence. The findings are too lengthy to be set out in this opinion. We shall summarize so much thereof as seems necessary for a proper disposition of the case.

The defendant's line of railway extends in a southerly direction from Omaha to Bellevue and Fort Crook. It runs nearly parallel with the Missouri river and, owing to the hills and bluffs, through numerous deep cuts. There are two main highways running from Omaha in a southerly direction; one to Bellevue along the east side, the other to Fort Crook on the west side, of defendant's track. The distance between these two highways is from 1,900 to 3,000 feet at different points. What is known in the record as the "Gregg road" was regularly opened in 1888. It is 3,000 feet long, connects the two main highways above mentioned, and intersects the defendant's railroad track and right of way. The defendant constructed its railway in 1906, and at the time provided an overhead bridge to carry the Gregg road over its tracks and right of way. This road was never used to any considerable extent. In 1915 the approaches to the bridge had washed away and it had become unsafe for any persons who might attempt to use it. In May of that year the defendant erected barricades on either side of the bridge, to prevent its use. These barricades remained until 1917, when the defendant dismantled and removed the bridge. No complaint was made by any individual or by the authorities of Sarpy county, as to the maintaining of the barricades or removal of the bridge, until in 1925.

It appears from the findings that there are in the vicinity two other highways which connect the two main highways above referred to. One of these roads is 1,200 feet north and the other 1,900 feet north of the Gregg road. The commission found that since 1915 there has been no travel over the Gregg road, going across or over defendant's tracks, and that the portion of the Gregg road lying east of defendant's tracks has been restored to cultivation by adjacent farmers. It found that the two roads to the north of the Gregg road and connecting the two main highways are shorter than the Gregg road, one of them

being 2,000 feet and the other 1,900 feet long. It further found that that part of the Gregg road lying west of the defendant's right of way is still open and is used only, or almost entirely, by one Johnson, who lives a few hundred feet south of the road. The commission found that the failure to use the road when it was first established was due to the condition of the road; that defendant's railroad at that point cuts through the eastern slope of a hill; that the cut on its west side is 20 feet deep and on the east side 12 to 14 feet deep; that there is a 15 per cent. grade leading to the proposed bridge from either the east or the west; that it is so steep it would be difficult for automobiles to negotiate the grade, and that to make an overhead bridge accessible a large amount of grading would be necessary; that the county had not indicated its willingness or intention to do such work; that if the bridge should be constructed it could be used only under most favorable conditions and then under great difficulty and inconvenience; that the other roads connecting the two main highways afford ample facilities for the general public to pass from one highway to the other, and that, with the possible exception of Mr. Johnson, none would have occasion to use the Gregg road in order to reach the paved and graveled highways. Then follows a discussion of the legal phases of the situation, and the commission finally concludes that it is the legal duty of defendant to establish and maintain a crossing at the point in question; concluding its findings as follows:

"We are therefore of the opinion that an overhead crossing should be constructed. Legally this highway is open. As we have shown, however, without grading it will be physically closed, even if an overhead crossing is constructed. Unless the county authorities proceed to properly grade the highway, any order we make 'will be a vain thing.' If the crossing is constructed, the public will not thereby secure any relief, because the road will not be in condition to be traveled. Our order, therefore, will be made contingent upon the county authorities doing the necessary work to make the road passable."

Section 5524, Comp. St. 1922, imposes the duty on every corporation "owning or operating any railroad, crossed by a public road, to make and keep in good repair, good and sufficient crossings for such road over their tracks, including all the grading, bridges, ditches, and culverts that may be necessary within their right of way." Succeeding sections give the state railway commission jurisdiction over all crossings of highways, outside of incorporated villages, towns and cities, over and under all railroads in the state of Nebraska, and authorize the commission to make such regulations for the construction, repair and maintenance thereof as it shall deem adequate and sufficient for the protection and necessity of the public.

While the above quoted statute apparently makes it the duty of the railway company to make and keep in repair good and sufficient crossings wherever its tracks are crossed by a public road, we think a proper interpretation of the statute requires us to consider the purpose and object of such legislation. Clearly, it was intended to provide a safe and adequate means for the public to cross the tracks of a railroad wherever public necessity or convenience would require it. Certainly, it was not the purpose to compel the construction and maintenance of costly bridges or viaducts where they would be of no use to the public, and where they would not serve the public convenience. If any other view were taken, it would require a vain and useless expenditure of large sums of money by railway companies to make and keep in good repair crossings of this character. Railroads are entitled to make such charges for their services, as common carriers, as will bring in an income sufficient to pay the cost of operation, maintenance and a reasonable return upon the investment. These charges must be borne by the patrons of the common carrier. In the last analysis the cost or expense of such crossings must be borne .by the public. It certainly is not good policy to require the public to pay for so-called improvements which would be of no benefit to the public. As pointed out by the commission in its findings, if at this time the bridge

or overhead crossing should be constructed, it would be of absolutely no use, nor is there any assurance that it ever would be of any use, to the public. It would require the expenditure of a large sum of money, with no corresponding benefit. Fairly interpreted, the statute was intended to require the construction of crossings over highways when, and only when, public necessity or convenience would be subserved thereby.

It is also a well-settled rule of law that a judgment or order must be based upon a cause of action existing, at least at the time of the hearing. Here, there was no right to the relief prayed at the time of filing the complaint, or at the time of the hearing; nor do we know that there ever would be a right to the relief demanded. We think it was not within the power of the railway commission to make such an order as that promulgated in the instant case.

By this holding we do not mean that the commission may not make an order to take effect at a future specified date, but it may not make such an order to take effect upon a contingency which may never happen.

It follows that the order of the commission should be reversed and the cause dismissed, but without prejudice to the plaintiff to institute another proceeding, praying for the construction of an overhead crossing when the future conditions exist which would warrant the construction of such a crossing.

REVERSED AND DISMISSED.